**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DANA J. TAYLOR,<br><br>Plaintiff,<br>v.<br><br>MARK BROTHERS, Superintendent of SCI Pine Grove; JEFFREY PAUL BOLAND, Correctional Health Administrator; SAMUEL WILLS, CO III, Lieutenant; WILLIAM MCKEE, CO I, Correctional Officer; GILL, Correctional Officer; JANE DOE, Nurse; JESSICA BEATTY, Nurse; and ALICE BROTHERS, Nurse<br><br>Defendants. | ) | Civil Action No. 2:24-cv-00462<br><br>Judge Nora Barry Fischer<br>Magistrate Judge Maureen P. Kelly<br><br>ECF No. 88 |

**MEMORANDUM OPINION ON DEFENDANTS'**
**<u>MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT</u>**

For the reasons set forth herein, Defendants' Motion to Dismiss the Plaintiff's Second Amended Complaint (Docket Nos. 88 and 57, respectively) will be DENIED as to Plaintiff's Eighth Amendment claim of excessive force against Defendant Corrections Officer ("CO") McKee and GRANTED as to all other claims.[1]

## I. PROCEDURAL AND FACTUAL HISTORY

### A. Procedural Background

Plaintiff, Dana J. Taylor, previously an inmate of the Fayette, Pennsylvania State

[1] The Court notes that although Defendants' pending motion as captioned includes SCI Pine Grove, said SCI was not named by Plaintiff as a Defendant and would be subject to dismissal if it were; it was therefore previously terminated from the docket. (Docket No. 40 at 3 n.1 and Docket No. 48). In addition, although Defendants' motion as captioned omits the four additional Defendants (Gill, Beatty, Brothers and Doe) named by Plaintiff in his Second Amended Complaint and included in the caption above, three of those Defendants are included in the substance and briefing of Defendants' motion. *See* Docket Nos. 89 and 93; *infra*, Section III(F).

Correctional Institution ("SCI Pine Grove") and now an inmate of SCI Albion, filed his Complaint in this civil rights action, pursuant to 42 U.S.C. § 1983, in March 2024, which Complaint was refiled, subsequent to delay, in November 2024. (Docket Nos. 1 and 10). During early 2025, Plaintiff filed an Amended Complaint, alleging violation of his Eighth and Fourteenth Amendment rights, as to which the then-Defendants (Brothers, Boland, Wills and McKee) filed a Partial Motion to Dismiss. (Dockets No. 21 and 23). Following briefing by the parties, the Report and Recommendation (Docket No. 40), adopted by Order of Court (Docket No. 48), dismissed (a) SCI Pine Grove; and (b) Plaintiff's official capacity, Fourteenth Amendment and *respondeat superior* claims against all/any of the Defendants so charged, with prejudice, and with the exception of Plaintiff's *respondeat superior* claim against Health Administrator Boland, as to which dismissal was granted without prejudice and with leave to amend. Plaintiff's grievance-procedure-based claims against Defendants Brothers and Wills were also dismissed, leaving only Plaintiff's Eighth Amendment claim for excessive force against CO McKee, which had been unchallenged. (Docket No. 40). Following the Court's grant of leave, Plaintiff's Second Amended Complaint was filed in early 2026 (Docket Nos. 56-57); following an extended series of various motions, and a Third Amended Complaint which was withdrawn subsequent to Defendants' third Motion to Dismiss (Docket Nos. 59-86), Defendants filed the pending Motion to Dismiss (Docket No. 88), addressing the operative Second Amended Complaint (Docket No. 57).

As discussed below, Plaintiff commenced the present action in connection with incidents arising on November 19, 2023, on which date Plaintiff and another inmate proceeded to beat – in the prison yard – a third inmate unconscious. (Docket No. 40 at 2). Plaintiff's operative complaint alleges violations of his Eighth Amendment rights in the forms of (a) excessive force use of spray and failure to intervene by COs McKee and Gill, respectively, in the course of Plaintiff's post-

assault submission to restraint; (b) unsatisfactory related medical attention thereafter; and (c) unsatisfactory responses to his related grievances. And as discussed *infra*, it repeats some claims previously presented and dismissed by this Court. (Docket Nos. 40 and 48). Defendants maintain that they are entitled to dismissal of all claims; their pending motion has been briefed by the parties and is ripe for review. (Docket Nos. 88, 92-93).

After thorough review of the parties' filings, read in the light most favorable to Plaintiff,[2] the Court concludes that Defendants are entitled to dismissal of all claims excepting Plaintiff's Eighth Amendment claim for excessive force against CO McKee in his individual capacity, as to which Plaintiff has met the currently applicable standard.

**B. Factual Background**

By Plaintiff's own account:

On the afternoon on November 19, 2023, Plaintiff and another inmate ("Jonathan Lua") assaulted a third inmate in the prison's main yard. Neither Plaintiff nor Lua, however, "h[ad] to be dragged off of the unconscious victim", but rather they "backed away from the victim allowing staff access to him". Defendant Gill "deploy[ed spray] in [an] attempt to contain the situation, and keep any risk of escalation at a minimum", while Plaintiff and Lua continued to assess their situation "until safe enough to surrender without any possibility of being ambushed while in handcuffs." Plaintiff then "tossed his weapon to the ground, he and [Lua] turned placing their hands behind their back", and Plaintiff was "fully cooperative" with CO Gill.[3] But "while

---

[2] *See* Docket No. 40 at 3-4, *infra* Section II (discussing applicable standard).

[3] *Cf.* Docket No. 57-1 at 3 (Initial Review Response to Grievance, completed by Defendant Wills, recounting that video showed that Plaintiff "backed up" and, after sprayed by Gill, then "threw the weapon to the ground and turned and placed [his] hands behind [his] back"); *id.* at 4 (Plaintiff's Appeal, stating that Gill's spraying was "taken elsewhere" by the wind (and, implicitly, that his compliance with Gill was voluntary)); Docket No. 57 at 16 ("Gill's attempt to spray [Plaintiff ] was botched by the wind").

[Plaintiff] allowed [Gill] to handcuff him, McKee "ran up pas[t Lua]" and "excessively spray[ed] Plaintiff in his eyes, ear and mouth." While McKee was spraying Plaintiff at "dangerously close range in the face . . . Gill held [his] hands cuffed behind his back" and Plaintiff did not move. (Docket No. 57 at 6-7).[4]

In the Medical Unit, Nurse Doe "attended to Plaintiff . . , wiped the blood from [his] lip and gave him two cups of water." She said that his "left ear was extremely red and needed washed out immediately" and "did not decontaminate" him.[5] As an asthmatic inmate who had been sprayed, Plaintiff was then escorted from "the Triage to the Med[ical] Annex" for an hour's observation. When moved, he was given a "bar of soap which [he] didn't even get to use because it fell to the floor and [he] was too blinded . . . to retrieve it . . . ." Because Nurse Doe and CO Gill declined to give him another bar of soap, he was "forced [to] clean out his eyes" as well as possible "with just water". (Docket No. 57. at 8-9).[6]

When the observation period was ending, Plaintiff asked Nurse Brothers for his inhaler and decontamination, but she replied "Sorry, Mr. Taylor, I'm just doing your vitals", and he was

---

[4] Although Plaintiff refers to "spray" or "mace", rather than "OC spray" (*i.e.*, pepper spray), in his grievance and filings, the Court notes that he does not make a distinction or dispute the grievance proceedings' clarification that OC spray was used. (Docket No. 57-1, grievance proceedings). Nor does he do so in response to this Court's prior observation. *See* Docket No. 89; Docket No. 40 at 2 ("Based on Taylor's description, the spray contained oleoresin capsicum ("OC").").

[5] *See also* Docket No. 57-1 at 4 (Plaintiff's averment that Nurse Doe later apologized to Plaintiff for failing to decontaminate him "because she thought they already had"); *id.* at 5 (Nurse "also informed the doctor that [Plaintiff's] eyes were swollen").

[6] *Cf.* Docket No. 57-1 at 5 (grievance appeal averment that Plaintiff suffered "blurry vision, trouble breathing, and irritated skin" from November 19, 2023 spray); *id.* at 9 (same); Docket No. 57 at 14 (imaging of prescriptions for topical hydrocortisone cream and nightly eye gel, dated February and March 2024, respectively). The Court notes that Plaintiff makes no averment of contemporaneous complaints of these injuries or requests for further medical assessment, urgent or otherwise, to address them or other serious medical need, in either grievance or court submission of claims. *Cf.* Docket No. 93 at 26 (self-serving statements at end of Plaintiff's briefing in response to Defendant's motion testing the allegations of his operative complaint, averring that he suffered permanent floating blurs to his vision and blister like skin scars from contamination). Even if these belated allegations were not inconsistent with Plaintiff's prior averments, the Court finds that they do not cure the deficiencies identified above. *See also, infra*, Section III.

escorted to a cell in the Restricted Housing Unit ("RHU"). At approximately 6:15pm, during the pill distribution medical line, Plaintiff requested his inhaler from Nurse Beatty who "ignored [him]"; however, Plaintiff was deprived of his inhaler until the next day, when it was provided to him at the same 6:15 p.m. medication distribution line. Since no Nurse Defendant provided Plaintiff "decontamination [or] his inhaler, [he] suffered for a week breathing in the [spray] still on his body and soaked into his dreads."[7] Approximately three and one-half months later, on March 5, 2024, shortly before the 6:15 p.m. pill distribution line, Plaintiff showed Nurse Beatty his empty inhaler but she "deprived [him] of his inhaler for a [second] time " – *i.e.*, for approximately six (6) hours, when it was provided at 12:25 a.m. the following morning when he awoke in a panic attack. (*Id.* at 9-10).

Plaintiff sought administrative remedies through the prison grievance process as to (1) McKee's spraying him "all in his face at close range" after he "tossed his knife . . . turned around, put[ ] his hands behind his back [and was] fully cooperative" and "was allowing [Gill] to cuff" him; and (2) his transfer to the RHU without decontamination or his inhaler and Nurse Beatty's failure, during medication distribution that evening (November 19th), to provide his inhaler. (Docket No. 57-1 at 1-2) (Grievance 1062035, November 20, 2023). *See also id.* at 6 (Facility Manager's Appeal Response, prepared by Defendant M. Brothers, Superintendent, noting that video "does not show that [Nurse Doe] washed [Plaintiff's] eyes out" in accordance with procedure and upholding the grievance to that extent only, noting that it was not prison policy to decontaminate all body parts and that directly following initial medical treatment, Plaintiff was

---

[7] *But see* Docket No. 21; Docket No. 40 at 2 (Plaintiff's Amended Complaint averments that his clothing was replaced when he was taken to the Medical Annex for observation). The Court notes that although Plaintiff avers that "[o]n information and belief, inmates involved in an altercation where a weapon is used [are] on restricted movement for 7 days", he has not averred in grievance or court claims/the operative complaint that he either requested or was denied (a) permission to shower or (b) other access to means of self-cleansing; or that he made any other request(s) (or presented with apparent need) for medical attention for serious need, *e.g.*, contamination or asthma related symptoms/conditions. (Docket No. 57 at 10). *See also supra,* n. 6.

placed on observation in the medical annex, and then in his cell, where Plaintiff "washed [his] eyes out" and was provided "with a bar of soap" by a CO); *id.* at 7 (further noting, as to denial of "inhaler during rounds" that "the investigation determined [Plaintiff] had no concerns at that time"). In his Appeal to the Secretary's Office, Plaintiff disputes the Facility Manager's averred facts regarding no excessive use of force by McKee, but raises no factual disputes as to his findings regarding decontamination or his inhaler. (*Id.* at 8-9). *See also* Docket No. 57 at 17 (Plaintiff "appealed to the Final Level of Appeals" the grievance process "justification of Defendant McKee's assault").[8]

## II. STANDARD OF REVIEW

The Court has previously laid out the relevant general legal standards regarding review of *pro se* complaints on motions to dismiss, accompanied by citations to binding legal authority, and noted that opportunity for a curative amendment should be provided in civil rights actions where it would not be inequitable or futile. (Docket No. 40 at 3-4). The Court remains cognizant of these and other applicable *pro se* considerations to its readings of Plaintiff's claims, including that: "When considering *pro se* pleadings, a court must employ less stringent standards than when judging the work product of an attorney" and "when presented with a *pro se* complaint, the court

---

[8] On March 7, 2024, Plaintiff also grieved Nurse Beatty's failure to provide another inhaler on request at evening pill distribution line on March 5th. *See* Docket No. 57-1 at 15 (Initial Review Response to Grievance 1077416); *id.* (noting that Plaintiff did not provide a refill slip and averring that Nurse Beatty had nonetheless ordered a replacement). Plaintiff defends his failure to exhaust this grievance on grounds of futility, averring that he did so "to the best of his ability" but that Defendants had stopped responding. Defendants' pending motion does not dispute this averment and raises no exhaustion-based grounds for dismissal of a related claim.

Exhaustion – like subject matter jurisdiction, personal jurisdiction, and venue – is, however, a "threshold issue that courts must address." *See, e.g., Small v. Camden County*, 728 F.3d 265, 270 n. 3 (3d Cir. 2013). Accordingly, the Court proceeds, on the basis of Plaintiff's unchallenged averments and under the now applicable standard, to include this allegation of deliberate indifference in those dismissed for failure to state a claim. *See e.g., Scutella v. Erie County Prison,* 2020 WL 5366043, at *4 (W.D. Pa. Sept. 8, 2020) (prison officials' alleged mishandling of grievances may excuse an inmate's obligation to exhaust administrative remedies before filing suit, although it does not give rise to an independent cause of action against the defendants). *See also infra,* Section III(F).

should construe the complaint liberally and draw fair inferences . . . ." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003). Yet "*pro se* litigants still must allege sufficient facts in their complaints to support a claim.'" (Docket No. 40 at 4) (quoting *Vogt v. Wetzel*, 8 F4th 182, 185 (3d Cir. 2021)).

The Court further observes that it may consider matters of public record and other matters of which a court may take judicial notice, exhibits attached to the complaint, and indisputably authentic documents when adjudicating a motion to dismiss under Rule 12(b)(6). *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).

## III. ANALYSIS

### A. Defendants Are Persons Acting Under Color of State Law

As a threshold matter, under 42 U.S.C. § 1983, private citizens are afforded a means to redress violations of federal law committed by state actors. In pertinent part, Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. ...

*Id*. Section 1983 is not a source of substantive rights, but merely a method for vindicating violations of federal law. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996). To establish a Section 1983 claim, a plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States ... by a person acting under color of state law." *Id*. (*quoting Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141

(3d Cir.1995)). There is no dispute that individual Defendants were acting under color of state law at all times relevant to this litigation.

**B. Claims Against the State Correctional Institution and Official Capacity Claims Against Individual Defendants Are Barred by the Eleventh Amendment**

As this Court has previously observed, the Eleventh Amendment to the United States Constitution precludes suits against a state and its agencies in Federal Court. (Docket No. 40 at 4-5). *See also, e.g., Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985). Absent an exception (and none are applicable here), this far-reaching state sovereign immunity bars claims for damages against the SCI and against Defendant employees in their official capacity. *Park v. Veasie*, 720 F.Supp.2d 658, 664 (M.D. 2010). *See also, e.g., Davis v. Clark*, 2022 WL 4287668, at *3 (W.D. Pa. Aug. 10, 2022), *report and recommendation adopted*, 2022 WL 3654927 (W.D. Pa. Aug. 25, 2022); Docket No. 40; Docket No. 89 at 8-9. Thus, just as claims against the SCI and the initial Defendants in their official capacity were dismissed by this Court's prior holding, Plaintiff's official capacity claims against the additional Defendants named in his operative complaint (Gill, Doe, Beatty and Borland) are also barred and subject to dismissal.

**C. Claims for Injunctive or Declaratory Relief Are Unavailable**

Although Plaintiff repeats his requests for injunctive and declaratory relief, the unsustainability of any such requests was addressed in, and Plaintiff is referred to, the Court's ruling on his prior complaint. (Docket Nos. 57 at 22; 40 at 5-6; 48; and 89 at 9.).

In further response, it is well established that the adjudicatory power of a federal court depends upon "the continuing existence of a live and acute controversy." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). "Past exposure to illegal conduct is insufficient to sustain a present case or controversy regarding injunctive relief if unaccompanied by continuing, present adverse effects." *Rosenberg v. Meese*, 622 F.Supp. 1451, 1462 (S.D.N.Y. 1985). Thus, a prisoner's transfer or

release from the facility complained of (absent an inapplicable exception) moots his claims for injunctive relief because he is no longer subject to the challenged conditions. *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003); *Abdul-Akbar v. Watson*, 4 F.3d 195, 206-07 (3d Cir. 1993). *Cf. Weinstein v. Bradford*, 423 U.S. 147, 349 (1975). Similarly, "[d]eclaratory relief is inappropriate solely to adjudicate past conduct". *Corliss v. O'Brien*, 200 F. App'x. 80, 84 (3d Cir. 2006) (per curiam); Docket No. 40 at 5-6.

Moving on, then, Plaintiff brings the following additional "Legal Claims" - under 18 U.S.C. § 1983 and as violations of his Eighth Amendment rights - against the eight (8) named Defendants: CO McKee – by spraying him while handcuffed, with deliberate indifference to injury; CO Gill –by (1) holding Plaintiff's handcuffed hands behind his back and failing to intervene while McKee sprayed him and (2) denying Plaintiff a replacement bar of soap when he was being escorted to Medical Annex; Nurse Doe – by failing to decontaminate him in triage; Nurse Brothers – by denying Plaintiff decontamination and inhaler while taking his vitals; Nurse Beatty - by denying his requested inhaler when giving him his night medicine; Health Administrator Boland - by failing to assure medical staff were properly trained as to asthmatic inmates sprayed; Willis –by misrepresentations in and misprocessing of his grievance; and SCI Superintendent Brothers – by failing to have staff "trained in their field areas". (Docket No. 57 at 18-22).

### D. Plaintiff Cannot State a Claim Against Defendants Brothers or Boland, as to Whom He Fails to Allege Personal Involvement, Supervisory Liability or Failure to Train

As noted in Section I(A), *supra*, Plaintiff's claims failing to allege personal involvement or premised solely on *respondeat superior* were previously addressed and dismissed, with the exception that Plaintiff was given leave to amend to correct his pleading deficiencies as to Defendant Boland. (Docket No. 40 at 6-9). Although it adds no specific allegations in support,

his Second Amended Complaint further broadly and generally attests that Brothers "ha[d] staff in his facility [who were] not properly trained in their Field Areas" and that Boland failed to "assur[e] his medical staff was properly trained". (Docket No. 57 at 20-1).

As the Court has discussed, in general, personal liability may be found under Section 1983 on the basis of a defendant's "personal involvement" in the deprivation of a Constitutional right. *Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 73 (3d Cir. 2011). That is, when a defendant plays an "affirmative part" in the alleged Constitutional violation. *See, e.g.*, *Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3rd Cir. 2005); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Liability cannot be predicated solely on the operation of *respondeat superior*. *See* Docket No. 40 at 6 (citing cases and noting that allegations of personal involvement must be made with appropriate particularity); *see also Rizzo v. Goode*, 423 U.S. 362 (1976). And supervisory liability may be found where a defendant in a position of authority personally participated or personally directed others in the violation of a plaintiff's rights, or knew of and acquiesced in a subordinate's unconstitutional conduct.[9]

As noted above, Plaintiff now also alleges, without more, that Brothers and Boland violated his Eighth Amendment rights by failing to assure staff were trained "in their field areas", including medical staff. Yet Plaintiff's operative complaint provides no specific allegations whatsoever regarding particular staff, "field areas" or training deficiencies. Nor does it include any averments in support of a plausible claim that he sustained any injury attributable to a training deficiency

[9] *See e.g., Keenan v. Philadelphia*, 983 F.2d 459, 466 (3d Cir. 1992); *Andrews v. Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990). Although supervisory liability may also attach where a defendant, with deliberate indifference to the consequences, established and maintained a policy or procedure that directly caused constitutional harm, a plaintiff must prove that the policy/procedure created an unreasonable risk of a constitutional violation; the defendant was aware of and subjectively indifferent to that unreasonable risk; and the Constitutional injury was caused by the failure to implement an appropriate policy/procedure. *Dinote v. Danberg*, 601 F.Appx. 127 (3d Cir. 2015); *Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001).

regarding asthmatic inmates. *See* Docket No. 40 at 9-13; *infra*, Section III(F) (failure to state a claim of deliberate indifference to a serious medical need).

Because the operative complaint brings no specific allegations supportive or suggestive of a plausible claim that he was harmed by the actionable personal involvement of, breach of a supervisory duty by, or a training deficiency attributable to, Brothers or Boland, said claims will be dismissed. *See generally* Docket Nos. 40 and 57.

**E. Plaintiff Fails to State a Constitutional Violation Based on the Handling of Grievances**

As noted in Section I(A), supra, Plaintiff's grievance-based claims against both Defendants Brothers and Wills were dismissed. Yet, Plaintiff's Second Amended Complaint reiterates those claims. He is therefore referred to the Court's prior holding. (Docket No. 40 at 7, 9; Docket No. 48).

In further response, in analyzing a procedural due process claim, "the first step is to determine whether the nature of the interest is one within the contemplation of the [Amendment's] liberty or property' language." *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000) (citing *Fuentes v. Shevin*, 407 U.S. 67 (1972)). Should the Court determine that a protected property or liberty interest has been implicated, "the question then becomes what process is due to protect it." *Id*. (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). But should the court determine that a protected liberty or property interest has not been implicated, then no further analysis is warranted. *See, e.g., Evans v. Fanelli*, Civ. No. 1:CV-12-2385, 2013 WL 3049112, *4 (M.D. Pa June 17, 2013).

It is well-settled that a prisoner has no due process rights that are implicated by the prison grievance system, as access to a prison grievance procedure is not a constitutionally mandated right and confers no liberty interest. Allegations about mishandling the grievance system thus fail

to state a cognizable Section 1983 claim. *Williams v. Armstrong*, 566 Fed.Appx. 106, 108-09 (3d Cir. 2014); *Fears v. Beard*, 532 Fed.Appx. 78, 81 (3d Cir. 2013); *Williams v. Folino*, 2015 WL 1212951 at *8 (W.D. Pa. 2015). *See also Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-38 (1977) (Burger, J., concurring); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) ("the existence of a prison grievance procedure confers no liberty interest on a prisoner.")[10]

### F. Plaintiff Fails to State a Claim Under the Eighth Amendment Based on Deliberate Indifference to a Serious Medical Need[11]

The Supreme Court has admonished that "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny. . . ." *Whitney v. Albers*, 475 U.S. 312, 319 (1986). Rather, the Eighth Amendment's protections include a prohibition against exhibiting deliberate indifference to serious medical needs of inmates. *Estelle*

---

[10] *Cf. Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to later-filed grievances, did not establish that the officials and administrators were involved in any underlying allegedly unconstitutional conduct). *See also Mearin v. Swartz*, 951 F. Supp.2d 776, 782 (W.D. Pa. 2013) ("merely participating in the grievance process is insufficient to confer knowledge of and acquiescence to a constitutional violation"). *See also generally Washington v. Wetzel*, 2022 WL 1782509, at *5 (W.D. Pa. June 1, 2022). Similarly, involvement in after-the-fact reviews or investigations of inmate complaints is not sufficient to establish the necessary personal involvement under Section 1983. *See Miller v. Knight*, 2021 WL 4445014, at *5 n.4 (W.D. Pa. Sept. 28, 2021) (citing cases).

[11] In keeping with the applicable standard, the Court looks past *pro se* Plaintiff's references to "medical negligence" and construes the operative Complaint - in challenging the adequacy of his medical care as an Eighth Amendment violation - as intending to bring a claim for deliberate indifference. *Cf.* Docket No. 40 at 8; Docket No. 57-1 (grieving "cruel and unusual punishment"); *cf. also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a Constitutional violation).

In addition, although Defendants' briefing also addresses this claim as one for conditions of confinement, the Court disagrees that the allegation of medical negligence under the 8th Amendment, warrants, in the context of Plaintiff's pleadings, consideration as a conditions of confinement claim. It does not, however, disagree with Defendants' conclusion that the claim would also be subject to dismissal under that alternative framing. *See* ECF No. 89 at 18-20. *See also Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2015) (to succeed on a conditions of confinement claim under the Eighth Amendment, a plaintiff must establish that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm."). Conditions of confinement violate the Eighth Amendment if they "deprive inmates of the minimal civilized measure of life's necessities." *Id.* at 347. And "extreme deprivations are required to make out a conditions-of-confinement claim," *Hudson*, 503 U.S. at 9, 112 S. Ct 995.

*v. Gamble*, 429 U.S. 97, 104 (1976). Thus, to set forth a cognizable claim, a plaintiff must allege both (1) a serious medical need and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Id.* at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).[12]

With respect to the first requirement, a medical need is "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoting *Pace v. Fauver*, 479 F.Supp. 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 860 (3d Cir. 1981)). A medical need may be similarly "serious" if "unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care," or if "denial or delay causes an inmate to suffer a life-long handicap or permanent loss." *Lanzaro*, 834 F.2d at 347 (citations omitted).

With respect to the second requirement set forth by the Supreme Court in *Estelle*, 429 U.S. at 104, a prison official acts with "deliberate indifference" "if he knows that [an] inmate[] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Deliberate indifference is a subjective standard,[13] and one fundamentally different than medical negligence.[14] The "mere receipt of inadequate medical care does not itself amount to deliberate indifference – the defendant must also

[12] *See also Lewis v. Holman*, 2026 WL 2491412, *3 (W.D. Pa. Aug. 25, 2026) (noting that "such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury . . . or persistent conduct in the face of resultant pain and risk of permanent injury") (citing *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993)*: White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990)).

[13] "When making a determination as to deliberate indifference, the court must focus [on] what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)." *Blackstone v. Thompson*, 568 Fed.Appx. 82, 84 (3d Cir. 2014).

[14] "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Pearson v. Prison Health Service*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

act with the requisite state of mind when providing that inadequate care" and it is "not inadvertence or error in good faith, that characterize the conduct prohibited by" the Eighth Amendment. *Pearson*, 850 F.3d at 534. Deliberate indifference to a prisoner's serious medical needs consists of "intentionally denying or delaying access" to medical care for such need, or "interfering with the treatment once prescribed." *Pearson*, 850 F.3d at 534, 537. The denial or delay must be motivated by "non-medical factors". *Id.* at 537. Plaintiff has no right to choose the specifics of his medical treatment; the treatment need only be reasonable. *Harrison v. Barkley*, 219 F.3d 132, 138-40 (2d Cir. 2000). And "in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate." *McClain v. Kale*, 2013 WL 5272816, *9 (M.D. Pa. Sept. 17, 2013).[15]

Plaintiff has failed to state or suggest a plausible claim of "deliberate indifference" to a "serious medical need" on the part of any Defendant. To the contrary, Plaintiff, by his own operative complaint, attests that: (1) he received medical attention and treatment at the medical unit/"triage" shortly after being sprayed in the face during the COs' reestablishment of control following Plaintiff's violent attack on another inmate; (2) triage Nurse Doe did not decontaminate his eyes because she was of the mistaken impression that they had already been treated (a mistake for which she later "personally" apologized), she noted that his left ear was red and should be washed out, and before leaving triage he was provided with soap; (3) he was then escorted in walking to the Medical Annex (for one-hour pre-cautionary observation due to his known asthma), at which time he dropped the soap he had been given in triage, and Nurse Doe and CO Gill declined

[15] Similarly, once a prisoner plaintiff comes under the care of medical professionals, a non-medical prison official cannot be deliberately indifferent for failing to intervene in the medical treatment unless s/he has reason to believe or actual knowledge that prison medical providers are mistreating the prisoner. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *Spruill v. Gillis*, 372 F.3d 218, 236-37 (3d Cir. 2004); *Roberts v. Tretnick*, 2014 WL 4218249 at *3-4 (W.D. Pa. 2014); *Giles v. Medical Contractors CMS*, 723 F.Supp.2d 710, 717 (D. Del. 2010).

to replace it (as Plaintiff was being escorted to a post-triage medical location); (3) after the observation window, he requested an inhaler and decontamination from Nurse Brothers, who apologetically indicated she was only there to take his vitals, and was then transferred to a cell in the RHU. Plaintiff does not aver that his eyes observably required triage decontamination (and his averments suggest to the contrary) or that he requested additional medical care from Nurse Doe. Nor does he attest that he made any request for replacement soap or additional medical treatment while under observation in the Medical Annex, or that he reported (or exhibited) any symptoms, urgency or treatment requests of serious medical need to vitals Nurse Brothers prior to transfer. And he attaches a grievance record to his operative complaint undisputedly stating that he was provided a bar of soap and washed his eyes at the RHU.[16] Plaintiff further attests that in the pill distribution line/rounds a few hours later, he requested an inhaler of Nurse Beatty who "ignored him", but also attests that it was provided at the same time/place next day (which is consistent with the grievance process statement that she requested it when Plaintiff did). And he attests that in March 2024, Plaintiff, - again during evening pill distribution - showed Nurse Beatty his empty inhaler but she "deprived [him][ of his inhaler for a [second] time " – *i.e.*, for approximately six (6) hours, when it was provided at 12:25 a.m. the following morning when he awoke in a panic attack. Again, Plaintiff does not aver that he presented with or reported any symptoms, urgency or medical treatment request to Nurse Beatty on either occasion.

In short, Plaintiff's averments do not reflect any unwarranted delay in initial medical assessment and treatment, nor any observably serious medical distress, nor that he experienced or made further complaint of serious unwellness, or requested related medical treatment that went unattended by the medical personnel. (Docket No. 57; *see also* Docket No. 57-1). Plaintiff

[16] Plaintiff also avers in his submissions to this Court that he was provided a change of clothes at the Medical Annex. *See supra*, n. 7.

evidences a misguided belief that a Defendant's failure to afford him whatever he believes warranted at the time - including immediate attention beyond that assessed and provided by medical personnel – innately gives rise to a constitutional violation. It does not. Indeed, is not always medically possible, as Plaintiff should be aware, to alleviate all symptoms or discomforts of (even serious) injury fully and immediately.

Plaintiff simply fails to state or suggest – after more than two years and three opportunities to amend his complaint - a plausible claim of Constitutional violation premised on any Defendant's deliberate indifference to a serious medical need for treatment beyond that medically-determined to be necessary and provided, including in response to any injury incurred in the use of spray on November 19, 2024.[17] Such claims will therefore be dismissed.[18]

**G. Plaintiff Sufficiently States a Claim of Excessive Force Against Defendant McKee**

To state a claim for an Eighth Amendment violation of excessive force, Plaintiff must allege both plausibly sufficient subjective and objective components. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). In considering the subjective component of an excessive force claim under the Eighth Amendment, the "pivotal inquiry" is "whether force was applied in a good faith effort to

[17] *See Lewis, 2026 WL 2491412, *3* (finding that pretrial detainee failed to allege a constitutional claim where, "most significantly, he complains of "inadequate" decontamination and medical treatment rather than a complete denial of care") (citing *Pearson v. Prison Health Serv*., 850 F.3d 526, 535 (3d Cir. 2017)); *id.* at *4 (noting that while the complaint "must be liberally construed, it 'must still allege facts, taken as true, to suggest the required elements of the claims asserted'") (quoting *Brown v. First Premier Bank*, 2013 WL 941572, at *2 (D.N.J. Mar. 6, 2013)).

[18] Although Defendants do not include Gill or Doe in this portion of their briefing, in the interest of judicial economy, the Court will exercise its inherent authority pursuant to Rule 12(b)(6) to do so, *sua sponte*, as the Defendants are similarly situated, the same core legal deficiencies identified apply, and amendment - through yet another round of revised complaint and responsive motion to dismiss - would thus be similarly futile. That is, the claims are based on patently insufficient averments of Eighth Amendment deliberate indifference, and involving a limited delay in Plaintiff's receipt of items (an inhaler and a bar of soap) requested for non-serious needs (a) following assessment and review by medical personnel, (b) without any apparent or communicated urgency, (c) while being moved between medical units, and/or (d) in the context of averments reflecting the absence of any subjective deliberate indifference. See *e.g.*, *Bintliff–Ritchie v. Am. Reinsurance Co*., 285 Fed. Appx. 940, 943 (3d Cir. 2008) ("The District Court has the power to dismiss claims *sua sponte* under Rule 12(b)(6)."); *Worster-Sims v. Tropicana Entm't, Inc*., 46 F.Supp.3d 513, 517 (D.N.J. 2014) ("Courts have the inherent authority to dismiss claims *sua sponte* for failure to state a claim upon which relief may be granted."); *id.* (concluding that courts have authority to *sua sponte* address the futility of a proposed new claim or defendant) (citing *Huafeng Xu v. Walsh*, 2014 WL 4388663, at *2 (D.N.J. Sept. 4, 2014)).

maintain or restore discipline, or maliciously and sadistically to cause harm." *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002); *see also Concepcion v. Morton*, 125 F. Supp. 2d 111, 125 (D.C. N.J. 2000) (holding that hindsight will not be used to second guess actions of correctional officers who perceived a dangerous situation, as prison personnel are afforded great deference when dealing with precarious situations). Thus, courts look to several factors including: "(1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of injury inflicted;[19] (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts to temper the severity of the forceful response." *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000); *Whitley*, 475 U.S. at 321. Consideration of these factors permits a court to make inferences concerning "whether the use of force could plausibly have been thought necessary"[20] or whether the circumstances show "such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The Court notes that the operative complaint alleges that after Plaintiff had dropped his weapon, turned and placed his hands behind his back, and was in the process of being handcuffed by CO Gills, CO McKee ran towards him, past his co-attacker, Lua, and sprayed him in the face at close range. And it therefore finds that Plaintiff's specific allegations assert material facts sufficient, under the currently applicable standard, to his claim against McKee. An inmate who "is not resisting, presents no security problem or threat, and requires no use of force to compel

---

[19] The extent of injuries that an inmate suffers is relevant, but "does not end" this analysis. *Hudson*, 503 U.S. at 7.

[20] "The use of chemical agents to subdue recalcitrant prisoners is not cruel and unusual when reasonably necessary." *Gibson v. Flemming*, 837 Fed. Appx. 860, 862 (3d Cir. 2020) (citing *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984)).

behavior." *Lewis v. Holman*, 2026 WL 2491412 (W.D. Pa. Aug. 25, 2026) (noting that "[n]umerous decisions have held that the use of OC spray 'on a physically contained inmate who was complying with instructions and posing no threat to the officer' is unlawful") (quoting *Sledge v. Martin*, 2023 WL 2332464, at *7 (W.D. Pa. Mar 2, 2023) (collecting cases). *Compare* Docket No. 89 at 15 (asserting that McKee's use of OC spray was subjectively reasonable where used to prevent continuation and/or spread of fighting within SCI and to gain Plaintiff's compliance with being handcuffed); *id.* at 17-18 (further asserting that it was *de minimus*). *Cf. Burton v. Crawford*, 2025 WL 3657383, *6 (M.D. Pa. Dec. 17, 2025) (denying summary judgment where violent prisoner was assertedly restrained/subdued when injury sustained, noting that defendants relied on a disputed version of the facts); *Brooks*, 204 F.3d at 103 (3d Cir. 2000) (denying summary judgment where, despite absence of evidence of significant injury, prisoner evidenced wanton force, *i.e.*, being beaten by prison officials while handcuffed).[21]

### H. Plaintiff Fails to Evidence a Plausible Claim of Failure to Intervene Against Defendant Gill

To state a valid cause of action under Section 1983 "in a case where an inmate claims an officer had a duty to take reasonable steps to protect a victim from another officer's use of excessive force", the inmate must show that: (1) the defendant failed or refused to intervene when a constitutional violation took place in his presence or with his knowledge; and (2) there was "a realistic and reasonable opportunity to intervene." *Smith v. Mensinger*, 293 F.3d 641, 650-651 (3d

[21] Although Defendants include in their Brief in Support a defense to charges of excessive force against John Does, the Court notes that no John Does appear to be otherwise mentioned in either Plaintiff's or Defendants' case captions, or in the operative complaint, as named Defendants. In his responsive Brief in Opposition, Plaintiff attests that the John Does "did not use excessive force to restrain Plaintiff while he was engaged in fighting with another inmate", and proceeds to accuse only CO McKee of excessive force - when "the fight was already over and Plaintiff was already restrained". (Docket No. 93 at 20-21). The Court further observes that pleading citations in this portion of Defendants' briefing, *e.g*,, "[ECF No. 57]. p.30", do not appear to correspond to the pleadings of this case, *e.g.*, Docket No. 57 has no page 30. (Docket No. 89 at 15-17).

Cir. 2002); *see also McCullough v. Miller*, 2008 WL 4361254, at *9 (W.D. Pa. Sept. 24, 2008). In determining whether an opportunity to intervene existed, courts take into account factors "including the temporal length of the alleged assault, the proximity of the non-intervening officer to the alleged assault, the ability of the non-intervening officer to perceive and/or hear the alleged assault, etc." *McCullough*, 2008 WL 4361254, at *9 (citing *Swinyer v. Cole*, 2006 WL 1874100, at *3 (W.D. Wash. July 6, 2006); *Mitchell v. James*, 2006 WL 212214, at *5 (E.D. Mo. Jan. 27, 2006)).

The Court finds, based on the record, that Plaintiff has failed to state or suggest a plausible claim that CO Gill had a reasonable and realistic opportunity to intervene. To the contrary, Plaintiff alleges that Gill violated his Eighth Amendment rights by failing to intervene when Gill witnessed CO McKee run toward Plaintiff and deploy OC spray in his face at close range. By Plaintiff's own averments, however, Gill was simultaneously engaged in single-handedly handcuffing an until then extremely violent prisoner who, having just dropped his weapon (upon Gill's "botched"/attempted use of spray to subdue him), was directly between Gill and the rapidly advancing McKee, who then sprayed towards Plaintiff's face at close range. (Docket No. 57). In these circumstances, a plausible claim of failure to intervene is precluded by the facially apparent (1) condensed time sequence and simultaneous nature of the events; (2) lack of Gill's opportunity to do so without unreasonable risk (as by unintentionally releasing custody of a demonstratedly violent and not yet secured prisoner);[22] and (3) Gill's self-protective interest in averting being OC sprayed while in close-proximity direct line of fire with Plaintiff.

[22] Plaintiff cites no case law suggestiong that an officer could be liable for failing to intervene in the use of excessive force merely by failing to give verbal warnings or commands, nor is the Court aware of any.

## IV. CONCLUSION

As explicated above, the circumstances specifically alleged in Plaintiff's operative complaint patently fail, with one exception, to state - or suggest a likelihood of discovery of - any plausible violation of his Constitutional or other legally actionable rights by any Defendant. The Court thus concludes, based on its review of the allegations and legal analysis above, that any attempt to further amend would be futile as a matter of law.[23] Defendants' pending Motion to Dismiss (Docket No. 88) is therefore DENIED as to Plaintiff's Eighth Amendment claim of excessive force against CO William McKee in his individual capacity, and GRANTED, with prejudice, in all other respects.

For the reasons set forth in this Memorandum Opinion, all Defendants will be dismissed from this action with the aforesaid exception. The matter will then be remanded back to the Magistrate Judge for further pretrial proceedings. An appropriate Order follows.

Dated: November 9th, 2026

By the Court:

*/s/ Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

cc/ecf: All counsel of record.

Dana J. Taylor
NW9060
SCI Albion
10745 Route 18
Albion, PA 16475-0001

[23] *Cf., e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).